WAY ENGINEERING COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Way Engineering Co. v. Commissioner
Docket No. 8249-72
United States Tax Court
T.C. Memo 1975-32; 1975 Tax Ct. Memo LEXIS 340; 34 T.C.M. (CCH) 210; T.C.M. (RIA) 750032; February 25, 1975, Filed Harold A. Chamberlain, for the petitioner. Robert H. Jones, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a deficiency in petitioner's Federal income tax of $43,292 for the fiscal year ended September 30, 1970. The single issue is whether the salary and bonus paid by petitioner to its president in the fiscal year ended September 30, 1970 constituted reasonable compensation deductible as a business expense. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, Way Engineering Company, Inc. ("Way Engineering"), a Texas corporation, does air conditioning contract and design work in the State of Texas. Petitioner had its principal office in Houston, Texas, when it filed its petition herein. It filed its 1970 corporate *341 income tax return with the district director of internal revenue in Austin, Texas. Way Engineering is the 96th largest air conditioning contract firm in the United States. The business was originally conducted by William Jefferson Way in the early 1900's. His son, L. C. Way ("L. C.") soon joined him. L. C.'s sons, Norman and W. J. ("Bill") Way, II, became active in the business in the 1930's. L. C., Norman and Bill incorporated the family business in 1958 and constituted the original board of directors. The corporation adopted a fiscal year ending September 30, and uses the completed contract method of accounting. L. C., Norman and Bill each owned one-third of Way Engineering's common stock and they drew equal salaries for the year ended September 30, 1959. Bill died in 1959 and was replaced on the Board of Directors by one Boone. On December 7, 1960, Elizabeth Way Waterman, Bill's widow, replaced Boone. In 1964 L. C. died, Norman became president and chief executive of Way Engineering, and Norman's sons (Peter and David) replaced L. C. and Elizabeth Way Waterman as directors. The board members remained the same until Norman, Peter and David Way were joined by Kristen Way Bradford *342 on May 19, 1970. On May 19, 1970, Way Engineering redeemed 875 of its outstanding shares from Bill's widow and a trust for the benefit of Bill's children. As a result, Norman's ownership of petitioner increased from 42 percent to 71 percent. After May 19, 1970, Peter Way, Norman's son, owned the other 29 percent of petitioner. Petitioner prospered after its incorporation in 1958. Its annual gross sales were over 4 million dollars in 1964 and reached 5.5 million dollars by 1968 and 6.3 million in 1971. Taxable income, retained earnings and cash on hand continued to increase through 1970. [1] Norman's compensation also increased, reaching its peak in 1970. [2]
*343 Respondent determined that Norman's total 1970 compensation of $158,649 (including petitioner's $2,754 profit sharing plan contribution for his account) was excessive and that reasonable compensation for that period was $70,000, plus the $2,754 profit sharing plan contribution. [3]
Norman Way has been employed by Way Engineering for 38 years. He received his B.S. in general engineering from Iowa State University, and is a professional engineer licensed by the State of Texas. As president and chief executive of Way Engineering, Norman's duties included final responsibility for selecting jobs to be performed by petitioner, insuring that work was adequately financed and assigning personnel to various jobs. He also designed air conditioning systems. Norman maintained daily contact with Way Engineering's employees. He lunched with employees four days a week. The *344 remaining noontime he attended the weekly Mechanical Contractors Association's meeting. Norman worked an average of 51 hours per week. He did not work weekends or evenings, except Wednesday evenings when he conducted staff meetings. While Norman was president, Way Engineering's employees increased from 20 in 1964 to 120 in 1970. The corporation had two sources of work: public jobs, which were awarded as a result of competitive bidding; and negotiated jobs, which depended on personal contacts. The profit realized on negotiated jobs exceeded that realized from bid jobs. Petitioner increased its negotiated business from 10 to 15 percent of its total business in 1964 to approximately 50 percent in 1970. Norman's reputation and personal contacts, and Way Engineering's policy of retaining cash accumulations were primarily responsible for the increase in negotiated business. Way Engineering followed the industry practice of retaining sufficient cash on hand to insure bills would be discounted by paying them promptly. Norman was also involved in soliciting public jobs. In 1970 Way Engineering completed four air conditioning contracts with Houston schools which were awarded through competitive *345 bidding. Two of those jobs, which were started in the previous fiscal year, returned sizable profits. Under the completed contract method of accounting, petitioner reported the income from those jobs in 1970. Norman was personally responsible for submitting the bids that secured those four jobs, and he provided on site supervision as work progressed. Norman's duties and responsibilities as president demanded an acute awareness of business conditions in his geographic area, in addition to the experience necessary successfully to operate the corporation. However, his duties and responsibilities did not increase substantially in 1970 over what they had been in 1969. At the time of incorporation in 1958, Way Engineering established a compensation policy for shareholder-officers, which coupled a base salary with a bonus payment. The bonus was based on net earnings after the payment of salaries to the shareholder-officers, but before the payment of Federal income taxes. [4] The same bonus arrangement remained in effect throughout the corporation's history, first compensating Norman, Bill and L. C. until Bill's death in 1959, then Norman and L. C. until L. C.'s death in 1964, and finally *346 Norman through 1970. In 1970, Norman's son Peter, in his capacity as vice-president, received a $13,708 base salary and a bonus of $40,000. The only other bonuses for 1970 were $7,000 paid to the secretary-treasurer, who was not a family member, and $1,000 spread among other employees. Norman and Peter Way were petitioner's only shareholder-officers after May 19, 1970. Compensation paid solely to shareholder-officers in 1970 was in approximately the same proportion as their stock holdings after the redemption of others' shares by petitioner on May 19, 1970. However, the board resolution authorizing Norman's salary and bonus for fiscal 1970 was *347 passed in December 1969 when Norman owned only 42 percent of the stock of petitioner. In 1970 petitioner loaned Norman $70,000 at 7 percent interest. Way Engineering paid no dividends prior to 1970; in 1970 it paid $4,900 in dividends. ULTIMATE FINDINGS OF FACT Reasonable compensation for Norman for petitioner's fiscal year ended September 30, 1970 was $120,000, plus petitioner's contribution for Norman to the profit sharing plan. OPINION Petitioner claims that the salary and bonus of $155,895 paid during its fiscal year ended September 30, 1970 to its president and major shareholder was reasonable compensation for the services he rendered during that and prior years, and that it is entitled to deduct that amount under section 162.[5] Respondent contends that only $70,000 (plus a $2,754 profit sharing plan contribution) represents reasonable compensation for petitioner's president. Whether amounts paid to shareholder-employees of a closely held corporation constitute reasonable compensation is a question of fact, and the burden of proving the reasonableness of the compensation is on the taxpayer. ; . *348 Because the recipient of the contested compensation was a major shareholder and chief executive officer of the corporation we have closely scrutinized the facts and circumstances. (Ct. Cl., 1961); , affirmed percuriam (C.A. 5, 1973).
We note that the corporation's business increased dramatically after Norman became its president in 1964. Employees under his supervision jumped from 20 in 1964 to 120 in 1970. The percentage of the business consisting of negotiated bids (on which the corporation made a higher profit than on competitive bids) increased from 10 to 15 percent in 1964 to 50 percent in 1970. Petitioner personally secured several large school air conditioning jobs which were completed and paid during petitioner's fiscal year ended September 30, 1970. He personally approved all petitioner's bids, and petitioner's construction business was fairly risky. It appears to the Court that a good *349 part of petitioner's prosperity is directly related to Norman's services and skills and it is appropriate that his compensation reflect that fact. Norman's compensation was based on a formula established by the corporation in 1958: he was paid a modest salary plus a bonus based on petitioner's net earnings after salaries but before Federal income taxes. This formula remained unchanged through the years in issue. See ; cf. , on appeal (C.A. 10, May 16, 1974). The application of the formula for the fiscal year ended September 30, 1970 was approved by the board of directors in December 1969, at which time Norman held only 42 percent of the stock of petitioner. However, after May 19, 1970, Norman owned 71 percent of the stock, and the formula produced compensation to him for the fiscal year ended September 30, 1970 roughly proportional to his stockholding. Originally the formula had resulted in compensating the officer-shareholders in precise proportion to their stockholdings. We are not unmindful that it has long been recognized that contingent compensation *350 may properly be higher than fixed and certain compensation. (C.A. 5, 1948), affirming a Memorandum Opinion of this Court. To be deductible as compensation, however, the payments made by petitioner to Norman must be for services rendered and not be a distribution with respect to his stock. . Here, the compensation paid Norman and Peter just about equaled petitioner's taxable income after subtracting their compensation. It represents, therefore, a very large inroad into petitioner's profits. We note that Norman appears to have been adequately compensated for all prior years' services. Petitioner presented the testimony of Norman and Peter Way. While they were not impartial witnesses, they were uncontradicted and not unworthy of belief. No reliable evidence of compensation paid by comparable companies was presented by either party, but such evidence is only one factor to consider along with all other facts and circumstances. . While we recognize *351 that petitioner paid no dividends prior to 1970, we also recognize that it needed cash to expand, to represent itself as a reliable, stable and safe contractor for bidding purposes, and to take advantage of cash discounts on purchases. Petitioner's reluctance to pay dividends, however, was not matched by reluctance to pay Norman a salary which under all the circumstances appears to us to have included an element of disguised dividends, over and above reasonable compensation, though not an element as large as that claimed by respondent. Under all the circumstances, and having carefully considered all the above factors and the entire record, and using our best judgment, we hold that petitioner is entitled to deduct $120,000 of the compensation it paid to Norman for its fiscal year ended September 30, 1970, plus the $2,754 profit sharing plan contribution made for his account. Decision will be entered under Rule 155.
Footnotes
1. This chart reflects a limited financial history of petitioner. Year
Gross Sales
Taxable
Retained Ended 9/30
in Dollars
Income
Earnings
Cash on Hand
1964
$ 4,307,968
$ The record does not provide any information on these figures.
*↩
$ 61,309
$ 32,561
1965
4,343,917
*
104,560
155,206
1966
5,117,959
77,817
151,794
166,265
1967
4,193,774
87,509
204,265
196,25 2
1968
5,505,261
107,970
264,791
280,607
1969
5,087,044
112,828
326,184
339,084
1970
4,976,853
208,507
431,484
535,583
1971
6,335,571
62,236
502,863
549,276
2. ↩ Year
Norman's
Norman's
Norman's Total Ended 9/30
Salary
Bonus
Compensation
1967
$ 24,200
$ 33,397
$ 57,597
1968
29,030
50,363
79,393
1969
26,958
68,310
95,268
1970
26,570
129,325
155,895
1971
*
*
91,233
3. Respondent conceded that petitioner's profit sharing plan contribution of $2,754 is deductible by Way Engineering regardless of a redetermination of Norman Way's salary. The record does not reflect how contributions for each officer were computed.↩
4. In 1958 the formula provided that L. C., Norman and Bill would be paid bonuses as additional compensation, based on net earnings of the corporation after payment of their salaries but before Federal income taxes. Each bonus equalled one-third of the sum computed as follows: On net earnings up to $50,000, an amount equal to 25 percent of such net earnings; on net earnings of $50,000 to $100,000, an amount equal to 30 percent of such net earnings; and on net earnings over $100,000, an amount equal to 35 percent of such net earnings.↩
5. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩